NEW-YORK,
May, 1806.

Potter
v
Lansing.

* *Charte-Partie,*
Part 1. Sec. 3,
Art. 2. § 1.

## Potter *against* Lansing.

THIS was an action on the case for an *escape*, and *false return*, on *mesne* process. The cause was tried at the *New-York Sittings*, the 17th *April*, 1805, before Mr. Justice *Thompson.* One *Briggs* was arrested by the defendant, who was sheriff of the city and county of *New-York*, on a *capias ad respondendum*, returnable in *July Term*, 1798, at the suit of the present plaintiff, and after being in custody in the gaol some weeks, he made his *escape.* The sheriff made a special return to the writ of a *rescue.* In support of his claim to damages, the plaintiff proved, that *Briggs* was master of the schooner *Friendship*, and, on the 2d *December*, 1797, signed bills of lading for a quantity of goods shipped on board of the said schooner by the plaintiff, to be delivered to *R. & G. Kinkead*, at *Kingston*, in the island of *Ja-* so expressed in the invoice and bill of lading ; the delivery to the carrier is considered as a delivery to the *consignee*, who alone can bring an action against the carrier, in case they are not delivered. The property, by the bill of lading, is vested in the consignee.

In action for an escape, and *false return*, on *mesne* process against a *sheriff*, the plaintiff can recover no more than he might have done in the original action ; nor ought he to recover more than he has actually lost in consequence of the escape. If goods be shipped *for the account and risk of the consignee, he paying the freight,* and it is

*maica.* The invoice of the goods, amounting to £1655 9 3 *South-Carolina* currency, which was exhibited and proved, stated them to be shipped for the *account* and *risk* of Messrs. *R. & G. Kinkead*, of *Kingston*, they paying freight, &c. A balance of account of £129 11 3 was also proved to be due from *Briggs* to the plaintiff. It further appeared in evidence, that *Briggs* ran away with the goods, and never delivered them to the consignees.

One *Hedden*, the gaoler, was called on the part of the defendant, as a witness, to prove that the plaintiff's attorney, who is since dead, on being informed of the exertions used by the defendant and his deputies, to retake *Briggs*, replied, that it was no matter ; that *Briggs* was not worth a cent, and that the defendant need not return the writ. This evidence being objected to, was overruled by the judge.

It appeared from the testimony of several witnesses, that *Briggs*, while in prison, was very poor, and had no means of subsistence. He made his escape by the address and management of some persons who came to see him. The defendant made diligent pursuit after *Briggs*, and was at considerable expense in endeavouring to retake him, but without effect.

The judge informed the jury, that he thought that the facts did not justify the sheriff's return of a rescue ; and that the plaintiff had established his right of action against *Briggs*, for the value of the goods specified in the bill of lading and invoice, as well as for the balance of account ; but that the jury were to decide as to the amount of damages, under all the circumstances of the case ; that the poverty of *Briggs* might be considered in mitigation of damages ; and if the return of the sheriff was fraudulently made, it would be in aggravation of the damages, which the plaintiff was entitled to recover. The jury found a verdict for the plaintiff for $3000 damages ; and on being asked by the plaintiff's counsel, declared that they took into consideration both the amount of invoice and the balance of account.

*Hoffman*, for the defendant. The motion to set aside this verdict is made on two grounds : 1. The testimony of *Hedden* ought to have been admitted, to show the declarations of the plaintiff's attorney in the original action, and to prove the insolvency of the defendant in that cause, in mitigation of damages. 2. The plaintiff, at all events, was not entitled to recover more than the balance of the account, as the goods specified in the invoice were for the account and risk of the merchants in *Kingston*, who alone had a right of action against *Briggs*.

1. The attorney of the plaintiff had a right to withdraw the writ if he pleased, and to direct the time and manner of its return. His declarations, therefore, ought to have been received as evidence against the plaintiff. The present suit was commenced long after the escape ; and it would be unfair, if the attorney were allowed to lull the sheriff into security by such declarations, to deter him from making pursuit, or endeavouring to retake the defendant, and afterwards compel him to return the writ, and to be answerable for the escape. If these declarations did not amount to a legitimate excuse to the sheriff, they ought, at least, to have been received in mitigation of damages.

2. The present plaintiff had no right of action for the goods, mentioned in the invoice and bill of lading, which were shipped for the account and risk of the consignees.— By the delivery to *Briggs*, the carrier, the property was transferred to Messrs. *Kinkeads*, who, it is fairly to be inferred from the evidence, had paid *Potter* for the goods.— The witness did not say that the amount was due the plaintiff, but merely that the invoice and account were regular and correct. It is a settled principle of law, that where goods are consigned for the account and risk of the consignee, who is to pay the freight, the property is transferred by the bill of lading, subject only to the right of the consignee to stop *in transitu.* 1 *Atk.* 245. *Snee* v. *Prescott.* 1 *Ld. Raym.* 271. *Evans* v. *Martlett*, 6 *East*, 22. *Newson* v. *Thornton,* 4 *East*, 211. *Cox* v. *Harden*, 7 *Term*, 440. *Hodgson* v. *Loy*, 8 *Term* 330. *Dawes* v. *Peck*, 3 *Bos.*

NEW-YORK,
May, 1806.

Potter
v.
Lansing.

* See Note in 6
East, p. 21.
† 5 Burrows,
2680.
§ 1 Term 659.

*& Puller* 582. *Dalton* v. *Solomonson.* All the cases are cited, and well considered, by Mr. Justice *Buller*, in the case of *Lickbarrow* v. *Mason*, in his opinion delivered in the house of lords.* The case of *Davis & Jordan* v. *James*,† and that of *Moore* v. *Wilson*,§ may be distinguished from the others, and were decided on the principle that the consignor had agreed to pay the carrier for the carriage of the goods. He might, therefore, bring the action against the carrier, on the ground of the contract between them. The judge charged the jury that the plaintiff had a right to damages to the value of the goods shipped, and the jury, under his direction, found the whole amount. If the principle here contended for be correct, the jury were misdirected, and the verdict ought to be set aside.

*Riggs & Radcliff*, for the plaintiff. 1. The *acts* of an attorney, no doubt, bind his client; but the mere declarations, or assertions of an attorney can never conclude the principal, especially when the person to whom the declarations were made did not act in consequence of them. Nor ought they to have been received in mitigation of damages. There was no express direction to the sheriff; it was the mere opinion of the attorney, which does not appear to have influenced the conduct of the sheriff, or to have lulled him into security.

2. It is not denied, that when goods are ordered by a person, and are delivered to a carrier for the account and risk of the consignee, the property is transferred by the consignor. The rule applies as between the consignor, and consignee, or third persons. Still a right of action remains in the consignor against his agent the carrier, arising out of the contract for the delivery of the goods to the consignee. Admitting that from the face of this transaction, the goods were to become absolutely the property of the consignee, and that the delivery to *Briggs*, is to be regarded as a delivery to the persons named in the bill of lading; still it does not follow, that the right of action is exclusively in the consignee.—— Two persons may have a right of action for the same thing. A bailee may bring his action to recover the possession of

NEW-YORK,
May, 1806.

Potter
v.
Lansing.

a chattel, and so may the owner. A right of action exists in the consignor, founded on the contract made with the carrier, and there is a right of action in the consignee founded on the right of property. Suppose the bill of lading had never come to the hands of the consignee, he would not have had any contract or document on which to support an action. The consignor has, therefore, a right of action from the contract for the carriage, until the consignee interposes his superior right of property. Whatever may be the rights of third persons, it does not lie in the mouth of the carrier to make the objection to the consignor's claim. He is estopped by the bill of lading. The action may be brought either in the name of the person to whom the promise is made, or in the name of the person for whose use it is intended. *Dutton* v. *Poole. Sir Th. Raymond* 302. *Hornsey* v. *Dimoche.* 1 *Ventris* 119. *Bell* v. *Champlain, Hardres,* 321. *No.* 3. *Stackley* v. *Mill, Styles,* 296. The case of *Snee* v. *Prescott,** turned solely on the right of property, and does not apply. Besides, it has been decided in subsequent cases,† that the consignor may maintain an action against the carrier. The true distinction seems to be, that where the action is founded on the *contract* for the delivery, it may be in the name of the consignor, but where it is on a *tort,* for a violation of the right of property, it may be brought by the consignee. If the right of action, therefore, in the plaintiff be well founded, the damages are not excessive. Even if they went beyond the measure of the contract, it must be remembered, that there was unequivocal evidence of a false return, which was a just reason for increasing the damages. The return was false both in law and fact. Where a person is arrested on *mesne process,* and is actually confined in prison, the sheriff can never return a rescue, for he is bound to keep the prisoner at his peril.§ And if rescued even by an invincible force, it is no excuse.‖ There is not a shadow of evidence to prove the fact of rescue. The defendant's witnesses proved the contrary. The poverty of *Briggs* is, in law, no ground for a mitigation of damages. In *Powel* v. *Hord,*† it was decided, that the po-

* 1 *Atkins,* 245.

† 5 *Burrows,* 2680. *Davis & Jordan* v. *James,* 1 Term, 659. *Moore* v. *Wilson.*

§ *Compton* v. *Ward,* 1 *Str.* 429. *May* v. *Proby, Croke. James* 419.
‖ 5 *Burrows,* 2812. *O'Neil* v. *Munson.*
† 1 *Strange,* 650.

verty of the party who had escaped, was so far from being a cause for mitigation of damages, that it furnished an additional reason for the jury to find the full amount of the plaintiff's claim, as he had lost the possibility of recovering the debt of the original defendant.

*Harison* in reply. In this action the plaintiff has no right to receive more than he has lost by the escape. He is entitled to an indemnity only for the injury he has sustained. If the consignor has really lost nothing, and has not been injured by the non-delivery of the goods to the consignee, he is not entitled to recover damages of the defendant. *Briggs* does not appear as the master of the vessel, in the employ of *Potter,* but as owner ; and the plaintiff appears as a commission-merchant, purchasing and shipping goods for the account and risk of Messrs. *Kinkeads.* The goods being shipped for the *account and risk* of the consignee, who was to pay the freight, the property was transferred by the delivery of the bill of lading, subject merely to the consignor's right to stop them *in transitu.* The plaintiff does not pretend to have any right of that kind. How then is he injured? or how is his right against the consignees, impaired by the conduct of *Briggs,* since the goods were at the risk of Messrs. *Kinkeads ?* There was a complete sale and delivery of the goods, as between vendor and vendee, and the latter alone has the right to bring an action against the carrier for a breach of his duty. The doctrine on this subject is founded in reason, and law and reason ought never to be at variance. If all the cases were examined, the law, as contended for on the part of the defendant, will be found well settled.\* It is about 50 years since the doctrine was laid down by Ld. C. *Hardwicke,* in the case of *Snee* v. *Prescott.*† In that case no distinction was made between an action arising on the contract between the carrier and consignor, and that founded on the right of property in the consignee. If any such distinction had existed in law, or in sound sense, it would not have escaped the discernment of that great and learned judge. In *Evans* v. *Martlett,*§ the principle is stated generally, that where goods are consigned by a bill of

\* 6 Term, 21, in note, *Lickbarrow* v. *Mason.*

† 1 *Atkins,* 245.

§ 1 Ld. Raym. 271. S. C. 12. Mod. 156.

lading to A, the consignee must bring the action against the master of the ship, if the goods be lost. The case of *Davis and Jordan* v. *James*,* seems to have given rise to all the doubt on this subject. It appears to turn on the point of the price of carriage being paid by the consignor; but from an attentive perusal, it will be evident that the property was considered as in the consignor. The case in 1 *Term*, 659,† is the same. In *Dawes* v. *Peck*,§ which was an action on the case against a common carrier, *Ld. Kenyon*, at N. P. considered that the delivery to the carrier fixed the property in the consignee, and that he alone could bring the action.— On a motion for a new trial,‖ the counsel relied upon the cases cited from 5 *Burrows*, and 1 *Term*; but the whole court agreed with *Ld. Kenyon*, that the right of action depended on the right of property; that those two cases were exceptions to the general rule, and were decided on a special agreement between the consignors and carriers. In the case of *Coxe* v. *Harden*,† it was held that where goods were shipped for the account and risk of the consignee, the property vested in him, and having got possession, though under a bill of lading deliverable to order of the consignor, and unindorsed, his property was considered as absolute and indefeasible. After the plaintiff parted with the possession of these goods, and the evidences of property, he had no claim over them. Considered as an agent or trustee for the consignees, he cannot maintain an action in his own name.— Two actions for the same cause cannot be supported; for then the carrier would be made liable to both parties. The criterion of the right of action is the right of property. The legal owner alone has the right to bring the action. Should the present plaintiff recover the amount of the invoice, *Briggs* would still remain liable to Messrs. *Kinkeads.*— Reason, as well as law and justice, are opposed to the doctrine contended for by the plaintiff.

The false return of the sheriff was no ground for increasing the damages. An action for an escape on *mesne* process, or for a false return was the same thing. The false return did not injure the right of the plaintiff. If the sheriff had

NEW-YORK, May, 1806.

Potter v. Lansing.

* 5 *Burr.* 2680.

† *Moore & Wilson.*

§ 3 *Espinasse's* cases, 12.

‖ 8 Term, 380.

† 4 *East*, 211.

NEW-YORK,
May, 1806.

Potter
v.
Lansing.

returned an escape the plaintiff might not have recovered a cent. The present plaintiff can never be entitled to recover more than he had a right to recover of the original defendant. The doctrine cited from 1 *Strange* 650, that the poverty of the defendant enhanced the plaintiff's claim, does not apply to the present case. The conduct of the sheriff throughout the whole transaction was meritorious. There is no pretence of any collusion with the prisoner as to the escape ; and every possible exertion was used to retake him.

TOMPKINS, J. The declarations of the plaintiff's attorney offered as evidence on the trial, prove nothing more than his opinion, at that time, of the solvency of *Briggs.* This would not be legal and proper testimony of that fact ; and had the attorney himself been alive, and produced as a witness, he would not have been permitted to give his own surmises, or belief upon the subject, but must have detailed facts that the jury might draw their inferences from them. The proposed testimony to establish the insolvency of *Briggs* was properly overruled. But the escape was before the day on which the writ was returnable ; and a recaption of *Briggs* by the sheriff before the return, might have been pleaded and would have shielded him in an action for the escape. If, therefore, the conduct or declarations of Mr. *Remsen,* who was the attorney of *Potter,* and had the controul of the suit, had a tendency to throw the sheriff off his guard, or to induce him to forbear to make exertions to apprehend *Briggs,* such conduct or declarations ought to have had an influence in the cause, and should not have been excluded. In granting new trials, however, upon the subsequent discovery of testimony, or for the rejection of testimony offered, we ought to consider whether it would, or ought to vary the issue of the cause ; if it would not, the court will not send the cause again to a jury. In the case now under consideration, the declarations of *Remsen* were made after the sheriff had used the most active exertions, and had spent large sums of money to retake *Briggs,* and after his agents had returned from *Massachusetts,* and abandoned the idea of retaking him.——

Though not expressly stated ; yet it is to be inferred from NEW-YORK, May, 1806. the case, that before the declarations of *Potter's* atttorney were made, the return day of the writ had passed. Under these circumstances, it is evident that the observations of the attorney could have had no tendency to prejudice the sheriff, or relax his exertions, and, therefore, if admitted, ought not to have varied the verdict of the jury.

Potter
v.
Lansing.

It is impossible to determine whether the circumstance, of the defendant having made a false return to the writ, operated on the minds of the jury to increase the damages. The judge was perfectly correct in stating to them that the return was legally false. But I do not think, that even if the sheriff knew it to be so, it ought to aggravate the damages. The true question is, what has the plaintiff lost in consequence of this escape ? The alleged false return by the sheriff, neither adds to, nor diminishes the loss, 'and, therefore, the solvency of *Briggs*, or his capacity to pay, must determine the quantum of damages sustained. If the circumstance of a false return be a substantive ground of damages, it would follow, that where the person escaping was perfectly solvent, and the sheriff makes a false return, the creditor might recover in damages more than the full amount of his debt. But the damages are excessive, for another and much more cogent reason. The jury founded their verdict upon *Potter's* right of action against *Briggs*, not only for the balance of the account current, but also for the goods specified in the bill of lading and invoice. It appears to be an invoice of goods shipped by *John Potter*, for *Kingston* in *Jamaica*, &c. on account and risk of Messrs. *Richard* and *George Kinkead* there, and cartage, wharfage, cooperage and commissions are charged by him to the Messrs. *Kinkead.* By the bill of lading the goods are to be delivered to the latter, or to their assigns, they paying freight. It is not denied, that the bill of lading and invoice may be liable to explanation, but as the case is destitute of any proof, except the documents themselves, to shew the relation between the consignor and the consignee, the plaintiff must be regarded as a mere agent purchasing on commissions ; and any

Vol. I.                         G g

property he might have had in the goods was divested by the delivery to the carrier, to be transported at the risk and expense of the consignees.   If his property in the goods were divested by that delivery, no right of action for them could have remained.

· In the case of *Dawes* v. *Peck*, 8 *D. & E.* 330, it is held that the right of action was to be governed by the consideration in whom the legal right to the property was vested. This principle was also adopted in *Evans* v. *Martlett*, 1 *Lord Raym.* 271, and in *Snee* v. *Prescott*, 1 *Atkins*, 248.  The authorities commented upon in 6 *East*, 23, are decisive to show, that consignors in the situation of *Potter* in this case, cannot bring the action against the carrier.   *Potter* was not answerable for the act of the captain, nor was he liable to the latter for the price of transportation, neither could he receive any injury from the non-delivery of the goods, except so far as it might prejudice his right to stop *in transitu*.  The consignees were liable to him for the price of the goods, whether they arrived or not, and for aught that appears by the case, he may already have received of Messrs. *Kinkead* the invoice amount.  Nothing has been disclosed to show, that he has received any damage, in consequence of being deprived of the power of stopping *in transitu*, or that any necessity existed for the exercise of that right.  Even if his equitable *lien*, or right of stopping *in transitu*, were destroyed by the act of the master ; yet I very much question whether the remedy therefor would be upon the contract ; as I am inclined to think redress for that injury must be sought in a special action on the case, or in an action of trover.   Inasmuch, then, as *Potter* could not have recovered the amount of the bill of lading and invoice in the original action against *Briggs*, damages ought not to have been allowed him, in this action, on that account. I am of opinion therefore, that a new trial must be awarded with costs to abide the event of the suit.

THOMPSON, J.   The principal question arising out of this case is, whether *Potter*, the plaintiff in this action, could have maintained an action against *Briggs* on the bill of lading signed by the latter ?   To say that he could not, ap-

pears to me so repugnant to the general rules of law, relative to the rights of parties arising out of special contracts, that I should require the most unequivocal and binding authority to lead me to adopt such a conclusion. The *bill of lading* specified that the goods were shipped by *Potter*, and were to be delivered to Messrs. *Richard* & *George Kinkead*, at *Kingston*, *Jamaica*, or their assigns, they paying freight. It is true the *invoice* stated the shipment to be for account and risk of the Messrs. *Kinkead*. But the master's contract, by his bill of lading, was made with *Potter*, and the stipulation on his part was to deliver the goods to the consignees, they paying freight; and it does not, I think, lie in his mouth to call in question the right of property as between consignor and consignee. There appears some little confusion, and contradiction, in the reported cases and decisions on this subject. In the case of *Evans* v. *Martlett*, 1 *Lord Raym.* 271, it appears to be laid down as a general rule, that if goods be consigned by bill of lading to A, he is the owner and must bring the action against the master of the ship, if the goods be lost. The same rule appears to have been adopted in the case of *Dawes* v. *Peck*, 8 *Term Rep.* 330, and the court there seem to think the right of action vested in the party who was to pay the freight, whether it be consignor or consignee. *Lord Kenyon* says, the only case where the consignor can maintain the action is where he is answerable for the price of the carriage. Yet in the case of *Moore* and others v. *Wilson*, 1 *Term Rep.* 759, the payment of the carriage was not considered the criterion by which to determine the right of action. The action there, was by the consignor against the carrier, and it was alleged in the declaration, that the plaintiffs were to pay for the carriage of the goods; but on the trial it appeared, that the consignee was to pay. Mr. Jus. *Buller* nonsuited the plaintiff, but the nonsuit was afterwards set aside, and *Buller* said he had been mistaken in point of law, for whatever might have been the contract between the vendor and vendee, *the agreement for the carriage was between the carrier and vendor*. And in the case of *Davis* and *Jordan* v. *James*, 5 *Bur.* 2680, the consignors

NEW-YORK, May, 1806.

Potter v. Lansing.

were permitted on the trial to maintain their action against the common carrier. The plaintiffs recovered, and on a motion for a new trial, it was urged that the consignee only could maintain the action ; But *Lord Mansfield* said there was neither law nor conscience in the objection. The vesting of the property may differ according to the circumstances of cases, but it does not enter into the present question. This is an action upon *the agreement between the plaintiffs and the carrier.* The plaintiff was to pay him : the action is properly brought by the person who agreed with, and was to pay him. If the payment of the freight be an immaterial circumstance in determining the right of action upon the bill of lading, according to the decision in the case of *Moore* and others v. *Wilson*, before cited, then the case of *Davis* and *Jordan* v. *James* goes the full length of giving the consignor a right of action, founded on the agreement contained in the bill of lading. That the payment of freight cannot affect the rights of the consignor, appears to me manifest : that is matter of arrangement between consignor and consignee, and the reason why by the bill of lading, according to the usual course of business, the consignee is to pay the freight, is because, none is due, until the delivery of the goods. Upon the whole, considering the contradictions that appear in the books on this question, I think it more analagous to the general rules of law applicable to contracts, to adopt the decisions which give a right of action to the party with whom the contract was made ; and must still retain the opinion expressed by me upon the trial, that *Potter* had a good cause of action against *Briggs*, upon the bill of lading.

With respect to my having misdirected the jury, in telling them, that if the sheriff had been, in their opinion, guilty of fraud in making the return he did on the writ, it was matter of aggravation, I have only to observe that if the idea communicated to, and received by the jury was, that they might give what is commonly called smart-money, beyond the actual damages of the plaintiff, it was undoubtedly incorrect. But I am satisfied that no such idea was commu-

nicated by me, or understood by the jury, for they had just been told that they might give the plaintiff's whole demand, or less, according as they should judge that the circumstances of the case would warrant, but there is nothing that will afford the inference that they were told they might give more. Nothing more could have been understood by the expressions used, than that if the sheriff had been guilty of fraud in making the return, he must have done it with a view to defeat the plaintiff's remedy against him for the escape, and could not, therefore, stand before the jury in a very favourable point of view. The amount of the verdict shows that the remarks had not much influence on the jury in estimating the damages.

My opinion, therefore, is, that a new trial ought not to be granted.

LIVINGSTON, J. The contract to deliver the goods having been made with *Potter*, must confer on him a right of action for their non-delivery. It would be without example to deny a party, to whom an express promise is made, whether as trustee, or in his own right, a remedy for its violation.—This would produce the singular case of a party's having a right to break an engagement, without responsibility to him with whom it is made, merely because, it is possible some other person may have a remedy against him; or, what would be more strange, it would make the very act which consummates the bargain between the shipper and master, that is, the delivery, destroy the remedy of the former on the contract. To whom the goods belong is of no importance, if it be once conceded, which cannot be controverted, that the right of property may be in one, while another, by express agreement, may have a remedy for some negligence or misconduct in relation to it. Whatever, therefore, may have been the right of the consignees in this instance, *Briggs* cannot contest that of the plaintiff, founded, as it is, on his own written agreement. Nor can any one be injured, by a right of action, for the same wrong, subsisting in different persons at the same time, (which, however inconvenient, must sometimes happen) as a recovery by one, will always bar the other's claim. But a right to sue the master is not only

NEW-YORK, matter of express contract here, but were it necessary or
May, 1806. proper to look beyond the agreement itself, I should say,
Potter    that it was a valuable one, conferred on the plaintiff by the
v.        bill of lading, not one which he held merely as trustee,
Lansing.  and which we ought not to deprive him of, under an idea
of the owner's being changed, as soon as the goods are put
on board.   That the plaintiff had a right of stopping them,
*in transitu*, in case of the bankruptcy of the consignees is
conceded.   From this, will necessarily follow the right of su-
ing the master in the same event, in case of a delivery to the
consignees after notice not to make it, or for an indemnity
for any misconduct on his part.  If he could not, on such oc-
casion, use his own name, it is not probable the bankrupt's
assignees would give him an authority to sue in theirs—so
that, were the master ever so solvent, he would lose all re-
course against him, and be obliged to come in under the
commission against the consignees.   In *Davis & Jordan*
‡ *5 Burr.* 2680. v. *James*,† and in *Moore & others* v. *Wilson*,§ the right of
§ *1 T. R.* 659. a consignor to sue a common carrier is well settled ;
though in the first of these cases some stress be laid on the
consignor's paying the carrier, the true ground, which is
there taken, and the one on which it ought to be placed,
is that of the *agreement*.   To determine in whom the right
of action is, it is better to look to the party to whom the pro-
mise is made, than to the person from whom the consideration
may proceed.   None of the more recent cases, cited by the
defendant, impair these authorities.   That of *Dawes* v.
† *8 T. R.* 330. *Peck*,† which looks a little that way, recognizes them both ;
and *Buller* takes particular notice, that in those cases there were
*special agreements* between the carrier and consignors, which
did not appear in the case then decided.   I take no notice of
several other cases, that were cited because they only re-
late to the question of stopping goods *in transitu*, and are
wholly impertinent to the one before us.

 Another point relates to the damages, which are said to
be excessive.   On the proofs before the jury, I should not
have agreed to so large a verdict.   But they were the proper
judges of *Briggs'* circumstances, and if they thought him

able to pay, the sum they have given is not extravagant, it being about one half of the plaintiff's demand against him. I can hardly suppose the jury gave larger damages on account of the sheriff's false return. The motion, therefore, for a new trial, must be denied. On the other point, I concur in the opinion of Mr. Justice *Tompkins*.

KENT, C. J. and SPENCER, J. concurred in the opinion delivered by Mr. Justice TOMPKINS.

New trial granted.*

*Margin note, right column:*

NEW-YORK,
May, 1806.

* See the case of *D. & G. Lud-low* v. *Bowne & Eddy, ante*, p. 1.