DININNY *vs.* FAY, late Sheriff, &c.

Taking the body of a debtor in execution is the highest form of satisfaction of a judgment. Hence the neglect of a sheriff to arrest the debtor, upon an execution issued against his person, is a wrong to the property, rights or interests of the judgment creditor, which would survive to his executors or administrators, and is therefore assignable.

Although the courts have always made a distinction, and held that the cause of action does not survive against the executor or administrator of the wrongdoer, unless his estate was benefited by the wrong, yet it seems from the reading of the *statute* that the cause of action for the same class of actions, precisely, survives alike in favor of the executors and administrators of the injured party, and against the executors and administrators of the wrongdoer.

But whether the distinction is well founded, or not, it is well settled that the wrongdoer is liable himself, to the executor or administrator of the person injured, in an action for a neglect of duty, whether the wrongdoer was benefited by the wrong, or otherwise.

In an action on the case, against a sheriff, for neglecting to take the body of a defendant in execution, the sheriff should be allowed, by way of mitigating damages, to prove the pecuniary circumstances and condition of the defendant in the execution.

THIS was an action against the defendant, as late sheriff of Steuben county, for neglecting to arrest one Henry B. Tuffts on an execution issued by a justice of the peace against his person, in an action brought against him by Alonzo Curtis, for wrongfully injuring personal property. The judgment had been assigned to the plaintiff in this suit by Curtis, with his right of action against the sheriff. The present action was tried at the Steuben circuit, in April, 1861, before Jus-

Dininny *v.* Fay.

tice KNOX and a jury. The defendant moved for a nonsuit, on the following grounds: 1. That the plaintiff had failed to show any opportunity to arrest Tuffts, or that he was in the county of Steuben, or had been in it. 2. That the right of action was not assignable. 3. That the execution contained no direction as to when or where it should be returned. The motion was denied by the court. The defendant then offered to prove that Tuffts was a worthless person; and that nothing could have been gained by the arrest. The plaintiff objected to the evidence, on the ground that it would be no defense, and that the answer to that count in the complaint did not set up such defense. The court sustained the objection, and excluded the evidence. The judge, among other things, charged the jury that it mattered not whether Tuffts was worth any thing; that is, whether he had any property which the sheriff could get hold of. The jury found a verdict in favor of the plaintiff for $79.16. The exceptions taken at the trial were ordered to be heard in the first instance at the general term.

*F. C. Dininny*, for the plaintiff.

*H. Sherwood*, for the defendant.

*By the Court*, JOHNSON, J. This action was brought against the defendant as sheriff, for the neglect of his deputy in not serving a body execution in his hands against one Henry B. Tuffts. There was a judgment against Tuffts, in favor of one Alonzo Curtis, on which an execution against the defendant's property had been issued and returned, no property found. Execution was then issued against his body, and placed in the hands of the deputy on the 20th of August, 1857. Tuffts continued to reside in the county until the 20th of September, 1857, when he left the state, and has not since returned. The evidence tended to show that the deputy, while he had this execution in his hands, knew where

Tuffts resided, and that he called upon him two or three times with the execution, without arresting him, and that he was requested to arrest Tuffts by the plaintiff in the execution, in September, before he, Tuffts, left the state, and was informed by the plaintiff where he was.

The plaintiff is the assignee of the judgment, and of this cause of action against the defendant. It is claimed by the defendant's counsel that the cause of action is not assignable, as it was at the trial, when a nonsuit was asked upon that ground, which was refused. Whether the cause of action is assignable depends, as it would seem, mainly upon the question whether it would survive to the executors or administrators of the assignor in case of his death. (*Zabriskie v. Smith*, 3 *Kern.* 322. *McKee v. Judd*, 2 *id.* 622. *The People v. Tioga Com. Pleas*, 19 *Wend.* 73.)

If it was a wrong done to the property, rights, or interests of the assignor, the right of action would survive to the executor or administrator. (3 *R. S.* 5th ed. 746, § 1.) This clearly does not fall within any of the exceptions mentioned in the several sections of the act.

It seems to me that upon the authority of numerous adjudged cases, this must be held to be an injury done to the estate of the assignor. It has been held that an executor could maintain case for a false return to final process. (*Williams' Ex. v. Cary*, 4 *Mod.* 403. *S. C.*, 12 *id.* 71.) This was upon the ground that it was an injury to the estate. In that case the under sheriff had actually levied more than he had returned. And so for an escape on final process. It seems to have been sometimes doubted whether the executor could have an action against the sheriff for an escape upon mesne process. But upon principle, as Mr. Chitty says, he may. (*See* 1 *Chit. Pl.* 79, 80, *and cases there cited.*) The principle upon which the action is maintained for the escape is, that the body is a pledge for the debt, and by the loss of the pledge the estate is injured. In *Paine v. Ulmer*, (7 *Mass. Rep.* 317,) it was held that an action against a

Dininny *v.* Fay.

sheriff for the default of his deputy in not returning an execution, survived to the administrator of the judgment creditor There the action was for not returning the execution, merely. The point was taken by the defendant's counsel that no action had ever been maintained by an executor or administrator for a mere nonfeasance; and it was urged that it was not alleged in the declaration that either the body of the defendant in the execution, or his property, could have been taken. But the court, without hesitation, held that the action could be maintained, and ordered judgment.

This is a much stronger case, as it appears by the evidence that the body of the defendant in the execution might have been taken. It is apparent, therefore, that the judgment creditor was deprived of the satisfaction of his judgment by the neglect of the defendant's deputy. The law presumes damage in such a case, and the statute gives an action against the sheriff to recover it. (3 *R. S. 5th ed.* 739, § 98.) The damage was of course to the estate of the creditor, and *prima facie* was the full amount of the judgment. (*Pardee v. Robertson,* 6 *Hill,* 550.) Taking the body of the debtor in execution is the highest form of satisfaction of a judgment. It is clear, I think, that this was a wrong to the property, rights, or interests, of the judgment creditor, which would have survived to his executors or administrators, and was, therefore, assignable.

It is claimed by the defendant's counsel that a cause of action does not survive to the executor or administrator of the party injured, except in cases where it will survive against the executor or administrator of the person who was guilty of the wrong; and that an action of this kind could not be maintained against the defendant's executors or administrators. It would seem, from the reading of the statute, that the cause of action for the same class of wrongs, precisely, survives alike in favor of the executors and administrators of the injured party, and against the executors and administrators of the wrongdoer. Such is the plain reading of the stat-

ute, and I can have no doubt that such was the intention. But the courts have always made a distinction, and held that the cause of action does not survive against the executor or administrator of the wrongdoer, unless his estate was benefited by the wrong. (*The People* v. *Gibbs*, 9 *Wend.* 29. *Franklin* v. *Low*, 1 *John.* 396. *Cravath* v. *Plympton, adm.*, 13 *Mass. Rep.* 454.)

The statute makes no such distinction. The action is there plainly given against the executors or administrators of the wrongdoer, "for wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer." The action is for the wrong done to the property or interests of another, and not for the benefits accruing to the property or interests of the wrongdoer. I can see no good reason for any such distinction, in law or morals, and it is difficult to understand how it ever could have obtained under our statute. If the executors or administrators of the wrongdoer were chargeable personally, there would seem to be a good reason for holding that they should not be made liable unless some funds had come to their hands by means of the wrong of their testator or intestate. But as no such consequence attaches against them, I do not see why the plain letter and reading of the statute should be thus perverted. This distinction was taken at an early day in England, under a statute wholly different in terms from ours, and when the courts were determining what cases, not falling within the letter of the statute, came within the equity and intention of it. The distinction thus taken has been followed by our courts, I think, without observing the difference between our statute as it now stands, and our former statute, and the English statute under which it was first taken.

But whether this distinction is well founded or not, it does not help the defendant. For it is equally well settled that the wrongdoer is liable himself, to the executor or adminis-

Dininny *v.* Fay.

trator of the person injured, in a case of this kind, whether he was benefited by the wrong or otherwise.

The remaining question is, whether the defendant should have been allowed, by way of mitigating damages, to prove the pecuniary circumstances and condition of the defendant in the execution.   The offer was to prove that such defendant was, at the time the judgment was rendered against him, and at all times afterwards, utterly insolvent, and without any means whatever to satisfy the debt, so that nothing could have been gained by his arrest.   This offer was overruled, and exception duly taken.   It has been repeatedly held, in actions against a sheriff for not returning, or not collecting, an execution against property, that the evidence thus rejected was proper in mitigation of damages.   (*Ledyard* v. *Jones,* 3 *Selden,* 550.   *Humphrey* v. *Hathorn,* 24 *Barb.* 278. *Bank of Rome* v. *Curtiss,* 1 *Hill,* 275.   *Pardee* v. *Robertson,* 6 *id.* 550.)   The same evidence has also been held admissible, in actions for an escape, on mesne process.   (*Patterson* v. *Westervelt,* 17 *Wend.* 543.   *Potter* v. *Lansing,* 1 *John.* 215.   *Kellogg* v. *Manro,* 9 *id.* 300.   *Burrill* v. *Lithgow,* 2 *Mass. Rep.* 526.   *Brooks* v. *Hoyt,* 6 *Pick.* 468.)   I see no good reason why the rule should not be the same in actions on the case, for neglecting to take the body of the defendant in execution.

It is urged on behalf of the plaintiff, that the body of a defendant in execution, being in law the highest form of satisfaction of a judgment, is equally so, whether the defendant is rich or poor ; and that it is nothing to the sheriff what kind of satisfaction a plaintiff may elect to take of his judgment.   But the conclusive answer to this is, that an action of this kind is given against the sheriff by statute, "at the suit of any party aggrieved, for the *damages sustained* by him."   This means pecuniary damages.   Hence, if it should be made to appear that satisfaction in that form alone could be of no pecuniary advantage to the plaintiff, by reason of the poverty of the defendant, that fact would seem to be

competent on the question of damages. The question is, what pecuniary loss has the plaintiff sustained by reason of the negligent or wrongful act. In actions for an escape on final process, brought against a sheriff, it has been held in England, and also in Massachusetts, that evidence of the insolvency of the defendant, in mitigation of damages, was admissible. (*Arden* v. *Goodacre*, 11 *Com. Bench Rep.* 371 ; 73 *Eng. Com. Law Rep.* 371. *Chase* v. *Keyes*, 2 *Gray*, 214.) But in both England and Massachusetts the statutes give such an action to recover the damages sustained, and not the amount of the judgment. In this respect those statutes are precisely like our statute which gives this action. In actions for an escape from imprisonment on execution, in this state, the statute gives as damages, " the debt, damages, or sum of money, for which such prisoner was committed, to be recovered by action of debt." (2 *R. S.* 437, § 63.) And hence it has always properly been held in such actions, in this state, that evidence of the insolvency of the defendant was improper. (*Rawson* v. *Dole*, 2 *John.* 454. *McCreery* v. *Willett*, 23 *How. Pr. R.* 129. *Renick* v. *Orser*, 4 *Bosw.* 384.) This proceeds upon the sole ground that the statute gives as damages the entire debt or sum for which the prisoner is committed. And this rule, obviously, must still prevail here, in such an action, although the action of debt *in form* has been abolished by the code, in all cases where the whole debt is claimed in the complaint, as was held in *McCreery* v. *Willett*, and *Renick* v. *Orser*, (*supra.*) But that does not affect the rule in this action, which is given by a different statute. In *Rawson* v. *Dole*, (*supra*,) which was an action of debt for an escape of a debtor in custody on a *ca. sa.*, Spencer, J., who delivered the opinion of the court, says : "If an action on the case had been brought, it might have been inquired what was lost by the escape, and the jury might have given such damages as they supposed the party had sustained."

This being in nature strictly an action on the case, to

recover the damages which the plaintiff had sustained, it was proper to inquire into the pecuniary circumstances, and condition of the defendant in the execution, for the purpose of enabling the jury to determine what pecuniary loss the plaintiff had sustained by the *nonfeasance.* Upon the whole evidence, it would be for them to determine whether the plaintiff had lost the whole of his debt, or what part, if any, had been thus lost. *Prima facie,* undoubtedly, the whole has been lost, if nothing is shown on the part of the defendant. But when the defendant's circumstances are inquired into, the jury will determine whether the arrest would have produced a satisfaction in money.

The evidence offered was improperly excluded, and there must consequently be a new trial, with costs to abide the event.

[Monroe General Term, September 1, 1862. *Johnson, Welles* and *J. C. Smith,* Justices.]