HUMPHREY *vs.* HATHORN, sheriff &c.

In an action against a sheriff, for neglecting to collect or return an execution against property, although the measure of damages which the plaintiff is presumptively entitled to recover, is the amount due on the execution, yet the sheriff, on the trial, may prove that the defendant had no property, or not sufficient proprerty out of which he could have satisfied the execution, by using the diligence required of him; which proof may be rebutted by the plaintiff, and thus the whole question as to what damages the plaintiff has sustained by the neglect of duty complained of, will be left open, to be settled by the jury.

What will amount to a permission, from the plaintiff's attorney, to a sheriff, to retain an execution in his hands beyond the return day, for the purpose of endeavoring to collect the amount; so as to afford a justification to the sheriff for omitting to collect the debt and return the execution within the time limited by law.

THIS was a motion for a new trial, founded on exceptions taken upon the trial at the circuit. The action was brought against the defendant as sheriff of Saratoga county, for not executing and not returning an execution, against property, delivered to him to collect. On the trial of the action at the circuit, the plaintiff proved a judgment in his own favor against the Empire State Mutual Insurance Company for $758.35, the roll of which was filed and the judgment docketed in Niagara county on the 30th of October, 1854. And that the said judgment was also docketed in Saratoga county, on the 2d day of November, 1854. It also appeared that an execution, in the usual form, was issued on the said judgment, by Chase & Farrell, the attorneys for the plaintiff, directed to the sheriff of Saratoga county, dated the 2d day of November, 1854, with an indorsement thereon, directing the sheriff to levy $758.35, with interest from the 30th day of October, 1854, besides his fees and poundage, and to return the said execution within 60 days after its receipt, to Niagara county clerk's office. It was admitted by the defendant that the execution was received by him on or about the 3d day of November, 1854, and thereupon the plaintiff rested.

The plaintiff put his right to recover on the ground that the defendant had neglected to levy on property liable to the execution, as he might have done, and on the ground that he neg-

Humphrey *v.* Hathorn.

lected to return the execution in 60 days after its receipt, as he ought to have done.   The defense, both by the answer and the proof, was directed to those two grounds respectively.   The first, fourth and fifth answers alleged that the defendant, within the life of the execution, levied on all the property of the insurance company liable to the execution, which came to his knowledge ; and in the second and third answers, the defendant set up what he claimed to be a permission of the plaintiff's attorneys to him, to retain the execution beyond the 60 days, for the purpose of endeavoring to collect it.   The proof tending to establish these several defenses, so far as it was presented by the exceptions, and considered necessary to their decision, is referred to in the opinion of the court.

*By the Court*, MULLETT, J.   The action against a sheriff for not executing and returning an execution delivered to him, according to its command, is founded on the statute.   (2 *R. S.* 440, § 77.)   The statute makes the sheriff liable to the aggrieved party, for the damages sustained by him, but the form of the remedy, and the facts necessary to be stated in the declaration or proved on the trial, are not set forth.   In the case of *Stevens and others* v. *Rowe*, (3 *Denio*, 327,) the supreme court held that an action on the *case* was the appropriate remedy, and that the particular grounds of damages on which the plaintiff seeks to recover, should be stated in the declaration, or the plaintiff should not be permitted to prove them on the trial.   In the case of *Ledyard* v. *Jones*, decided in the court of appeals, in 1852, (3 *Selden*, 550,) that court declined to sanction the doctrine which made it necessary for a plaintiff in his declaration against a sheriff for not returning an execution according to its requirements, to state the particular grounds on which his claim to damages is founded; and also refused to adopt the rule which allowed a sheriff, in such a case, to mitigate the damages claimed by the plaintiff, by showing that the defendant in the execution still has property out of which it may be collected ; and decided that in such an action, *prima facie*, the measure of the plaintiff's damage is the amount required to be raised by the

execution ; but that the sheriff may show in mitigation of these damages that the defendant in the execution had no property, or not sufficient property, upon which he could have levied to satisfy the execution, or any part thereof. By the rule laid down by this decision, as I understand it, in an action against a sheriff for neglecting to collect or return an execution against property, although the presumptive measure of damages which the plaintiff is entitled to recover, is the amount due on the execution, yet the sheriff may prove, on the trial, that the defendant had no property, or not sufficient property, out of which he could have satisfied the execution, by using the diligence required of him, which proof may be rebutted by the plaintiff, and thus the whole question as to what damages the plaintiff has sustained by the neglect of duty complained of, is flung open to be settled by the jury. This is the rule under which this action was tried. The facts relating to the ability of the insurance company to pay the execution out of its property, the power of the sheriff to collect it, and his misconduct in that respect, were put in issue by the pleadings and were the subjects of proof on the trial. This proof was submitted to the jury, and I see no reason for the defendant to complain of the decisions or charge of the judge in reference to these subjects.

The complaint of the plaintiff against the defendant for not returning the execution within 60 days after its receipt, is met by an allegation on the part of the defendant that after his receipt and before the return day of the execution, the plaintiff's attorneys directed him to do certain things in reference to collecting the execution, which they knew could not be performed within its life, and promised that for the delay occasioned by obeying such instructions they would not hold him responsible. The proof on this point shows that on the 18th of December, 1854, the plaintiff's attorneys wrote to the defendant, as follows : " *Dear Sir*, Will you probably be able to collect the amount of John Humphrey's execution agt. Empire State Mutual Insurance Company, by the time the execution runs out ? Mr. Humphrey is owing some money, and he wants to know, so that he need not be disappointed in relation to his

business matters. Please answer the above, and much oblige. Yours, &c." That on the 25th of December, 1854, the defendant answered the above letter, as follows: " *Gents*, Yours of· the 18th came duly to hand, and in answer to the probability of collecting the execution against the Empire State Mutual Insurance Company by the 1st of January, which is the time the sixty days expires, I do not think that I can get it by that time, but the secretary, Mr. Young, jr., and the treasurer, Mr. Pike, say that they will pay it as soon as possible, but will not be able to pay it as soon as the 1st of January. Shall I retain the execution or return it? I will act your pleasure." To which the plaintiff's attorneys replied, on the 28th of December, 1854, as follows: " Dear sir : Yours of the 25th is received. You have of course levied upon the safe and contents, and the personal property of the Empire State Mutual Insurance Company. We of course cannot give any directions which will in any way affect our lien upon the property. We wish you to send us a list of the property you have under the execution, and if you should advertise it for sale, send us word before you do so, that we may make arrangements to attend the sale. As to delay, we cannot give any time without risking our lien upon personal property. If the company will secure our claim, we shall be willing to give a short time to them, though our client is much embarrassed for the want of the money ; but we are not now sufficiently informed to give any promise. Please write us on the receipt of this, and give us a list of the property you have levied upon. As for yourself, all we want is for you to do what you can to secure our debt, and to get it as fast as you can. You cannot, of course, give us the notice we wish and sell within the life of the execution. We shall make no claim against you for such delay in returning the execution. Resp. yours."

The 60 days in which the sheriff was required to return the execution, by the indorsement upon it, expired on the 2d day of January, 1855, yet the plaintiff's attorneys, within the life of the execution, and after they had been advised by the defendant, that it was not probable that he could get the money

by the expiration of the 60 days, but that the secretary and treasurer of the insurance company assured him that they would pay it as soon as possible, wrote to the defendant as sheriff, requesting him to do certain things in reference to the proceedings to collect the execution, which they knew, and acknowledged, must require him to retain it beyond its return day, and promised to make no claim against him for such delay in returning the execution. And also, in the same letter, wrote to the defendant that all "*they wanted was for him to do what he could to secure their debt, and get it as soon as he could.*" The letter containing these instructions was dated at Lockport, December 28, 1854, and according to the time occupied in transmitting the letter to which this was an answer, this must have been received by the defendant before the return day of the execution, and while he had power to seize property, by virtue of the execution, if such seizure was desired or insisted upon by the plaintiff. But it is difficult to conceive how the plaintiff's attorneys could have given the sheriff more direct permission to retain the execution beyond its return day; at least long enough to make and send a list of the property he had under the execution, at any time within its life, to the plaintiff. The presumption of the plaintiff's attorneys that the defendant *had levied on the safe and contents, and personal property*, before the 28th of December, was not founded on any thing that the defendant had said or written, and did not release him from his duty to send the plaintiff's attorneys a list of the property he had taken under the execution, even though it may have been seized on the last day of its life. The learned judge therefore erred, under the circumstances of the case, in charging the jury that the several letters given in evidence *contained no authority to the defendant to hold the execution beyond the sixty days, and that the defendant was therefore bound to return the execution according to its command.* It is almost equally difficult for me to understand the latter part of the instructions contained in the letter of December 28, in any other way than as authorizing the sheriff to disregard the strict directions contained on the execution, and to do what he could to

*secure* the plaintiff's debt.   The instructions are directed to the sheriff, and informed him that all that was wanted of him was for him to do what he could to *secure* the plaintiff's debt, and get it as soon as he could.   This was certainly a modification of the directions indorsed on the execution, which required the sheriff to *levy* $758.35, *with interest from the 30th day of October*, 1854, *besides his fees and poundage, and to return the execution within* 60 *days after it's receipt ;* especially as that instruction was given within five or six days of the expiration of the execution.   I think the judge erred in his instructions to the jury in reference to this point too, and that the verdict must be set aside and a new trial granted, with costs to abide the event.

[ERIE GENERAL TERM, January 12, 1857.   *Marvin, Bowen* and *Mullett,* Justices.]