## METCALF *a.* STRYKER.

*Supreme Court, Second District; General Term,* 1859.

### SHERIFF LIABLE AS BAIL.—DEFENCES.

A sheriff sued upon his liability as bail under section 201 of the Code, cannot avoid his liability by showing that the debtor, whom he arrested and discharged without sufficient bail to the action, was insolvent and had no property not exempt from execution, and had ever since remained in the same condition.[*]

---

[*] It is otherwise where the action is for an escape; as was held in the case of DAGUERRE *a.* ORSER (*New York Common Pleas; Special Term, March,* 1859).—The action was tried by the court, and the following finding and decision was rendered:

HILTON, J.—This action was tried before me without a jury, at a special term held in December, 1858.

On a motion during the progress of the cause made before Judge Brady for

Where bail that the sheriff has accepted fail to justify, the sheriff becomes liable as bail to the action, and his liability is commensurate with that of any other bail.

*It seems,* that it would be otherwise with the case of mere bail upon mesne process, or on surrender.

An action against the sheriff on his liability as bail to the action, is not an action for neglect of his official duty. The damages are the amount of the judgment, and are not subject of mitigation by evidence of the insolvency, &c., of the prisoner.

Exception directed to be heard in the first instance at general term.

The action was against the defendant, sheriff of the county of Kings, to recover upon his liability as bail under the provisions of the Code.

The allegations of the complaint were as follows : .

The plaintiffs above named, by Benedict, Burr & Benedict, their attorneys, respectfully show to this court :

That at all the times hereinafter named they were co-partners, doing business in the city of New York, under the firm name of Metcalf & Duncan.

These plaintiffs, on information and belief, further allege, that the defendant, Burdett Stryker, was sheriff of the county of Kings at and from August 1, 1857, to December 31, 1857.

That an order of arrest, of which a copy is hereto annexed, marked Schedule B, was duly issued by the Honorable C. A.

---

leave to amend the complaint (see 3 *Abbotts' Pr. R.*, 86), he decided that the action was brought for an escape.

It will therefore be so considered for all the purposes of the trial.

In an action of such a character it has long been settled, that the *actual damage* sustained, not the debt or judgment recovered against the original debtor, forms the measure of damages. (*Crocker on Sheriffs, &c.,* § 581 ; Patterson *a.* Westervelt, 17 *Wend.,* 543, and cases cited ; Kellogg *a.* Munro, 9 *Johns.,* 300 ; 2 *Rev. Stats.,* 4th ed., § 82.)

The evidence at the trial showed that Blagge, the original debtor, and against whom judgment had been obtained,—at the time he escaped from the custody of the defendant, by whom he had been taken, and was held under an order of arrest issued out of this court,—was insolvent ; and up to the time of his death at New Grenada, in September, 1855, his pecuniary circumstances continued unchanged.

The plaintiff, therefore, has sustained no actual injury by reason of the escape, and is only entitled to recover against the defendant nominal damages.

Judgment for plaintiff for six cents.

Peabody, at that time a justice of the Supreme Court of the State of New York, to the said defendant, on or about the 15th day of August, 1857, in an action in said court, wherein said plaintiffs were plaintiffs, and one George C. Harriman was defendant, requiring the defendant in this action to arrest and hold to bail, in the sum of five thousand dollars, the said Harriman.

That thereupon said defendant arrested said Harriman, on or about the 20th day of August, 1857, and thereafter allowed the said Harriman to escape from his custody; and on or about the 25th day of August, the said defendant delivered to the plaintiffs' attorneys, by whom the order of arrest was subscribed or indorsed, a paper purporting to be a certified copy of an undertaking of the bail taken by him upon the discharge of the said Harriman from arrest, a copy of which is hereto annexed, marked Schedule A; but the same was not executed by two or more sufficient bail, and did not state their places of residence and occupations, according to law; and that on the next day—that is to say, on or about the 26th day of August, 1857—a notice was duly served on said defendant, that the plaintiffs did not accept the said bail, but that after the receipt of the said notice by the said defendant, neither the said defendant nor the said Harriman gave to the plaintiffs or their attorneys, by whom the said order of arrest was subscribed, notice of the justification of the same, or other bail, before a judge of the court or a county judge, at any specified time or place, nor any justification, or other notice of justification, as required by law.

That on the 12th day of August, 1858, the plaintiffs obtained judgment in said action against said Harriman for the sum of three thousand seven hundred and forty-three dollars and seventy-seven cents, and on the 13th day of August, 1858, caused to be filed a transcript of said judgment in the office of the clerk of King's county, and an execution to be duly issued to the then sheriff of King's county, upon said judgment against the property of said Harriman, which was thereafter returned by said sheriff wholly unsatisfied; and thereafter, and on the 27th day of August, 1858, an execution against the person of said Harriman was duly issued to the said sheriff, which has also been returned by the said sheriff, " defendant not found." That the

said judgment has. not been paid, nor any part thereof, but the same is still unpaid, not appealed from, modified, reversed, or discharged.

That the amount of said judgment and interest was duly demanded of said defendant, before the commencement of this action, and the payment of the same refused.

Wherefore the plaintiffs demand judgment against the defendant for the said sum of three thousand seven hundred and forty-three dollars and seventy-seven cents, and interest thereon from the 12th day of August, 1858, besides costs of this action.                    BENEDICT, BURR & BENEDICT,
                                          Plaintiffs' Attorneys.


The answer denied most of the allegations of the complaint.

The action was tried at a circuit court in the county of Kings, before Mr. Justice Lott and a jury, on the 29th day of March, 1859.

The plaintiffs, to prove the issues on their part, by Samuel Duncan, one of the plaintiffs, proved the copartnership stated in the complaint, and put in evidence a copy of a judgment-roll, by which they proved the judgment against George C. Harriman, as stated in the complaint. The plaintiffs also proved the issuing of the order of arrest, and the arrest of Harriman thereon, by the defendant, as alleged. They also gave in evidence the certified copy of the undertaking mentioned in the complaint, and proved that the same was delivered to the plaintiffs' attorneys, by whom the order of arrest was subscribed or indorsed, on the 25th day of August, 1857. The terms of the undertaking were, that George C. Harriman, the defendant, "shall at all times render himself amenable to the process of this court, during the pendency of this action, and to such as may be issued to enforce the judgment therein;" but the instrument did not state the occupations of the bail.

On the undertaking were indorsed the affidavits and certificate of acknowledgment.

The plaintiffs also proved that a notice that the plaintiffs did not accept the bail, was served upon the defendant, as stated in the complaint.

The defendant admitted that a transcript of the judgment against George C. Harriman, above-mentioned, was filed in

the office of the clerk of Kings county, on the 13th day of August, 1858.

The plaintiffs also proved the issuing and return of the two executions, as stated in the complaint, and that the amount of the judgment was demanded of the defendant before the commencement of this action.

Thereupon they rested their case, and the defendant's counsel then offered to prove that George C. Harriman, at the time of his arrest by the defendant, and for a long time before, was, and ever since had been, utterly insolvent, and unable to pay the judgment, or any part thereof, and that he had no property, real or personal, at the time of his arrest, or for a long time before, or at any time since such arrest other than was exempt from execution. To this proof, the counsel for the plaintiffs objected, on the ground that it did not constitute a legal defence to the plaintiffs' action, and was not admissible in mitigation of the damages recoverable by the plaintiffs in this action.. The court sustained the objection, and excluded the offered proof, to which decision of the court, the defendant's counsel excepted.

The interest on the judgment was admitted to be $164.40. The defendant then rested, and the court thereupon instructed the jury, that the plaintiffs were entitled to recover the amount of the judgment, with interest, and directed the jury to render a verdict for the plaintiffs for $3908.17. To which direction and charge, the defendant's counsel. excepted.

The jury then rendered their verdict as directed; and the court thereupon ordered the exceptions to be heard in the first instance, at the general term, and that judgment in the mean time be suspended.

*William W. Goodrich*, for the plaintiffs.—I. The failure to serve notice of justification fixes the liability of the sheriff. (*Code*, § 201.) This liability is " the liability of bail." (*Code*, § 201; Buckman *a*. Carnley, 9 *How. Pr. R.*, 180.) This, by the undertaking, is that Harriman "shall at all times render himself amenable to the process of the court during the pendency of this action, and to such as may be issued to enforce the judgment therein." This liability is not that of the old system, but the liability of bail under the Code, and from this the sheriff can *only* be exonerated in the manner provided by

sections 191 and 201. (Buckman *a.* Carnley, 9 *How. Pr. R.*, 180.)

II. The liability of bail is the amount of the judgment against Harriman, with interest. Before the Code, insolvency of their principal was no defence to the bail. (3 *Petersd. Abr.*, 147, 167.) The jury must give their verdict for the whole debt. (Rawson *a.* Dole, 2 *Johns.*, 454; Porter *a.* Sayward, 7 *Mass.*, 377; Burrows *a.* Lowden, 8 *Ib.*, 373.) An insolvent discharge under the two-thirds act was a bar to the action against bail, *only* to avoid circuity, and because the principal was not amenable to process. (Mechanics' Bank *a.* Hazard, 9 *Johns.*, 392; Kane *a.* Ingraham, 2 *Johns. C.*, 403.) There is a distinction between actions against the sheriff and those against bail. The Revised Statutes limited the liability of the sheriff, but not that of bail, to " extent of damages sustained." (2 *Rev. Stats.*, 437, § 62.) All the reported cases are founded upon the Revised Statutes. The liability of bail sought to be enforced here is altogether different.

III. If evidence of insolvency should be admitted, then insolvency exempts a person from the operations of the provisions of the Code as to arrest and bail. This *reductio ad absurdum* of the argument of the defence shows its fallacy.

*J. M. Pray*, for the defendant.—I. The court erred in excluding the testimony offered by the defendant to prove the insolvency of George C. Harriman. 1. The plaintiffs claim to recover on the ground that the defendant "allowed the said Harriman to escape from his custody," and the insolvency of the prisoner may be given in evidence, in mitigation of damages in action, for escape from arrest on mesne process, or other omissions of duty, unless prohibited by statute. (*Sedgw. on Damages*, 1st ed., 506–512, and cases therein cited; Potter *a.* Lansing, 1 *Johns.*, 215; Russell *a.* Turner, 7 *Ib.*, 189; Patterson *a.* Westervelt, 17 *Wend.*, 543; Rawson *a.* Dole, 2 *Johns.*, 454; Van Slyck *a.* Hogeboom, 6 *Ib.*, 270; Kellogg *a.* Munro, 9 *Ib.*, 300; Latham *a.* Westervelt, sheriff, &c., 26 *Barb.*, 256; Humphrey *a.* Hathorn, 24 *Barb.*, 278; 9 *Metc.*, 564.)

II. The defendant acted in good faith, in letting Harriman to bail, as stated in the complaint, and was bound so to let him to bail. (*Code*, § 186; Richards *a.* Porter, 7 *Johns.*, 137.)

III. The omission of the defendant to give notice of justifica-
tion of bail, was at most a neglect of duty, for which the plain-
tiff cannot recover more than he has lost by such neglect; and
the defendant may, in all cases of mere neglect of duty, prove
the insolvency of the party for whom he is sought to be made
liable, in mitigation of damages. (Bank of Rome *a.* Curtis, 1
*Hill,* 275; Pardee *a.* Robertson, 6 *Ib.,* 550; Ledyard *a.* Jones,
3 *Seld.,* 550.)

IV. The defendant, if liable to the plaintiff, is only liable as
bail for a defendant in custody on mesne process, and as such
may prove the insolvency of Harriman, in mitigation of dam-
ages. (*Code,* §§ 201, 190, 276; Kellogg *a.* Munro, 9 *Johns.,*
300; Dele *a.* Moulter, 2 *Johns. Cas.,* 205; 2 *Ib.,* 406; 4 *Johns.,*
189 and 213.)

V. The undertaking required by the Code (§ 187) is, in its
nature and effect, the same as a bond for the performance of
covenants, under which the actual damages sustained, and no
more, can be recovered. (*Code,* §§ 180, 181, 182, 203, and sec-
tions above cited; 2 *Rev. Stats.,* 3d ed., 530, &c., §§ 58, 54, 60,
62, 65, 66, 72, 74, 76; 1 *Rev. Laws of* 1813, 423, § 13, 425, § 19,
426, § 21, 429, §§ 6, 7, 430, § 9.)

VI. It was not intended by the Code to change or vary the
liability of the defendant to the plaintiff in this case, for any
matter stated in the complaint, otherwise than to provide, as in
section 190, that bail shall be proceeded against by action only;
and section 276 limits the amount of recovery to the same rate
of damages as might have been heretofore recovered for the
same cause of action.

VII. The bond required by the Revised Statutes to be given
for the liberties of the jail (with which the Code has not inter-
fered), is the same in substance and effect as the undertaking of
bail required by the Code upon an order of arrest; and in case
of a breach of such bond, the plaintiff, upon whose process the
party bailed was in custody, could only recover of the sheriff,
or of the bail, his actual damages, if the prisoner was in custody
on mesne process; nor could he recover any more if the pris-
oner was in custody upon execution, except by the statute, which
gives him the amount required to be made by the execution, and
thus shuts out all testimony in mitigation. (2 *Rev. Stats.,* 533,
§ 80, 3d ed., § 62, 1st ed., 437.)

VIII. The court erred in instructing the jury as to the amount which the plaintiffs were entitled to recover.

By the Court.—Emmott, J.—The radical fault of the argument for the defendant in this case is, that it treats the action as if it were brought for an escape, or a negligent or wilful breach of duty by the sheriff. There may be some color given to this view by some of the allegations in the complaint, but the liability of the defendant does not rest upon such a foundation. His liability is that of bail to the action, which is cast upon him, in circumstances like the present, by section 201 of the Code of Procedure.

It appeared upon the trial of this cause, at the circuit, that the plaintiffs commenced an action in this court against one George C. Harriman, and obtained an order of arrest, which was delivered to the defendant, then sheriff of Kings county, on or about August 15, 1857. The defendant arrested Harriman pursuant to this order, and held him in custody until he gave bail. On the 20th of August, an undertaking was executed by three sureties on his behalf, pursuant to section 187 of the Code, except that the bail did not state their occupations; and thereupon the sheriff discharged him from custody. On the 25th of August, the sheriff served a copy of the undertaking upon the attorneys for the plaintiffs in that action. The next day—i. e., the 26th of August—the plaintiffs' attorneys gave the sheriff notice that the bail was not accepted. The bail did not justify, nor was any notice of justification served, and no new bail was given; but the action proceeded to judgment, and the plaintiffs recovered, in August, 1858, $3743.77 of Harriman. A transcript was filed in the county of Kings, and an execution against property issued to the sheriff of that county, which was returned unsatisfied. Then an execution against the body of the defendant was issued, and that also was returned, that he could not be found.

It was conceded on the trial, as it was also upon the argument, that the defendant was liable; but the question is, what is the extent and measure of his liability? After the plaintiffs had rested at the trial, the defendant's counsel offered to prove that George C. Harriman, at the time of his arrest, was insolvent, and had no property not exempt from execution, and had ever since remained in the same condition. The judge rejected the evi-

dence, and the defendant's counsel excepted, and thereupon a verdict was taken for the plaintiffs, by the direction of the court, for the amount of the judgment against Harriman, with interest, the defendant's counsel also excepting to such direction.

Section 201 of the Code enacts that, in such a case as this— that is, where, after the defendant is arrested, his bail is not justified—the sheriff himself shall be liable as bail. The next section (202) provides for the enforcement of the sheriff's liability as bail, by prosecuting his official bond, when a judgment has been recovered against him upon such liability, and an execution thereon returned unsatisfied. And section 203 makes the bail taken upon arrest, when they do not justify, liable to the sheriff for all damages which he may sustain by their omission. Thus the three sections together impose upon the sheriff a liability in a given case, provide for its enforcement, and. then for his protection, or indemnity by the bail whom he has accepted.

It is plain enough that in the case we are considering, the defendant became liable in the same manner and to the same extent as bail to the action would have been, if such bail had been given and perfected. Thus the inquiry is reduced to the question, what is the liability of bail, under the Code, in such a case as the present?

The Code itself furnishes no answer to this question, and the undertaking which is substituted for the bail-bond of the old practice is no more explicit in this respect than the latter. The bail agree, in this undertaking, that the defendant shall at all times render himself amenable to the process of this court during the pendency of the action, and to such as may be issued to enforce the judgment thereon. In the present case, the Code cast this undertaking upon the sheriff, and his undertaking was forfeited, inasmuch as the defendant in that action was not amenable to the process issued to enforce the judgment, and the execution issued against his body was returned, "not found." But neither the undertaking nor the Code inform us what is to be the consequence, or the extent of the penalty incurred. We must, therefore, resort to the former practice of the courts, and the former legislation of the State, to assist our investigation. We are justified in this resort by section 276 of the Code, declaring that in all actions for damages the recovery shall be at the same rate as might have heretofore been recovered, if that section be ·

applicable to the present action, which I very much doubt; but we are justified by the sheer necessity of the case, if it be not. In the multiplied questions growing out of the Code of Procedure with which the courts are continually vexed, they would often be entirely at sea, if they did not act upon their own knowledge of the previous law, and also presume, with a distinguished judge of our highest court in a famous case, that the authors of the Code had some knowledge of what the law and the practice was, and acted upon it.

It must not be forgotten that this is not an action for a neglect of duty by the sheriff, as, for instance, in not returning an execution, or otherwise. There would have been actions on the case before the Code destroyed our nomenclature. The plaintiff, in all such actions, recovered *damages*, of which the amount of the judgment was the measure, *prima facie*, but subject to be mitigated in certain circumstances.

The Bank of Rome *a.* Carters (1 *Hill*, 275), and Pardee *a.* Robertson (6 *Ib.*, 550), are instances of this class of actions under the former practice, in the latter of which Judge Cowen traces the history of the then existing mode of procedure. So, under the present system, Humphrey *a.* Hathorn, (24 *Barb.*, 278), and Ledyard *a.* Jones (3 *Seld.*, 550), are cases in which the same rule of damages observed under the former practice, was applied. Neither of these cases is parallel to the present.

Nor can we, strictly or properly, consider this as an action for an escape, or to be determined by the rules which have been applied to such cases. If the undertaking given on behalf of the defendant Harriman in the original action, which was accepted by the present defendant, and upon which he discharged his prisoner, was not in conformity to the requisition of the statute, which seems to have been the case, then it would seem that Harriman's discharge was an escape, for which the defendant was liable. It is, however, unnecessary to determine whether this was so, or what would be the sheriff's liability in consequence, since that is not the ground of the present action. If an action had been brought forthwith upon such discharge, for an escape from mesne process, the rule of damages would have been different from what we understand it to be now. But the defendant's liability was fixed by the failure of Harriman's bail to justify, and that liability was the same, whether the undertaking

were or were not in conformity to the statute. That question, and the extent of the sheriff's liability for an escape, may be passed over. They are not the points now before us.

Still it may be observed, that there is an analogy between actions for escapes, and actions upon bail-bonds. It was well settled under the law, before the Code, that in an action for an escape from final process, the plaintiff recovered the amount of the original judgment, while for an escape from mesne process he could only recover his actual damages. In the former class of cases, therefore—that is, when the defendant was charged in execution—the action was *debt*, while in the latter it was *case*. (See, to this effect, Ransom *a.* Dole, 2 *Johns.*, 454; Patton *a.* Lansing, 1 *Ib.*, 215; Russell *a.* Turner, 9 *Ib.*, 189; Patterson *a.* Westervelt, 17 *Wend.*, 543.) See also Van Slyck *a.* Hogeboom, (6 *Johns.*, 270), in which the distinction between the two classes of actions is clearly defined. Kellogg *a.* Munro (9 *Ib.*, 9) was a suit upon a bond given for jail liberties, and although brought after judgment, was, in effect, for an escape from mesne process. The defendant had been in custody on mesne process, was surrendered by his bail, and was thereupon admitted to the liberties, and no execution was proved.

We were referred upon the argument, by the defendant's counsel, to the provisions of the Revised Statutes in relation to bonds for the jail liberties and suits thereon. (2 *Rev. Stats.*, 433 and seq.) But the liability of the bail to the action under the Code is not the same with that of the bail given for the limits. The bond for the jail liberties may be given either before or after judgment, when the defendant is held either on mesne or final process, and its effect is varied accordingly. If it be given for his discharge from mesne process, or upon his surrender by his bail on such process, then the liability of the bail extends only to the actual loss sustained by the plaintiffs, as the liability of the sheriff for an escape from mesne process is limited to the actual damage. But if the prisoner was held by an execution, then his bail for the jail liberties must pay the judgment, if he commits a breach of the bond.

In all these cases, the bail who undertake that their principal shall be amenable to final process, were held to pay the amount of his debt if he was not, and the sheriff who suffers an escape from final process, is held to the same liability.

Now it is very true that the undertaking given for Harriman, the place of which was taken by the sheriff, was given upon an arrest upon mesne process. But it was not merely bail upon an arrest, nor was it bail for the jail liberties, it was bail to the action—to the same effect as special bail under the former practice. The liability of the bail in such an undertaking, and the consequent liability of the sheriff in the present case, continues through the whole course of the action. It varies with the several stages of the cause, and its ultimate extent is not determined until judgment is recovered, and all the remedies upon it exhausted against the principal. It may be terminated at any time by the surrender of the principal by his bail before judgment, or after it, or even after suit upon the original undertaking. The sheriff possesses the same power to surrender the defendant after he has become substituted as his bail, by the failure of the latter to justify. (Buckman *a.* Carnley, 9 *Pr. R.*, 180.) Unless, however, such a surrender is made, the liability of the bail continues upon the same undertaking, and after judgment and execution is limited only by the amount of the judgment against the principal.

We can see no escape from the conclusions that the sheriff, in the present case, incurred the liability of bail to the action; .that this suit is properly brought upon this liability; that if there had been an .action against the bail, in an undertaking which had been accepted or had been justified, the recovery must have been the full amount of the original judgment and interest; and that, therefore, the present defendant was liable to the same extent. As soon as we determine that the liability of the sheriff is that of bail, and the present action is brought against him as in effect made bail by this statute, and not for negligence or an escape, it must be seen that these consequences are inevitable. If it were otherwise, the provisions of the Code as to arrest and bail would be rendered entirely nugatory. We cannot apply any rule to the liability of the present defendant, which will not also be applicable to that of the sureties in the undertaking of bail, when perfected. Whatever will exonerate the sheriff, or mitigate recovery against him, must have the same effect in cases where they are sued. The result is, that we are asked by defendant's counsel to hold that, whenever a defendant who has been arrested is insolvent—which may sometimes be the very

reason of his arrest, if not its cause—his bail are absolved from all responsibility, except from nominal damages. If that were the law, the only persons whose arrest would be of any avail, would be those whose arrest is altogether unnecessary, to provide for the enforcement of the law or its judgments. The law, previous to the Code, was guilty of no such absurdity, and as the present statute neither alters nor declares the rule, we are not at liberty to impute such consequences to it.

As the defendant's liability was therefore fixed by the original judgment, evidence of the insolvency of the judgment-debtor was immaterial, and was properly rejected. The direction given to the jury was correct, and judgment must be ordered for the plaintiff upon the verdict, with costs.

## HUNGERFORD'S BANK a. THE POTSDAM AND WATERTOWN RAILROAD COMPANY.

*Supreme Court, Sixth District; General Term, October*, 1859.

#### Usury.—Indorsers for Corporations.

The act of 1850 (*Laws of* 1850, 344)—prohibiting corporations from interposing the defence of usury—does not affect the contract in respect to other parties; but merely precludes the corporation and those in privity with them from avoiding it.

An accommodation indorser of usurious negotiable paper made by a corporation, may interpose the defence of usury.

Appeal from a judgment rendered on a trial by the court.

The decision below will be found reported 9 *Ante*, 124, where the facts are fully stated. From that judgment the defendants appealed to the general term.

By the Court.*—W. F. Allen, J.—The plaintiff loaned to the Potsdam and Watertown Railroad Company money at a

---

* Present, W. F. Allen, Pratt, Balcom, and Mullen, JJ.